UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PROVIDENCE ST. PETER HOSPITAL,<br><br>    Petitioner,<br><br>  v.<br><br>UNITED STAFF NURSES' UNION LOCAL 141,<br><br>    Respondent.<br><br>UNITED STAFF NURSES' UNION LOCAL 141,<br><br>    Counter-Complainant,<br><br>  v.<br><br>PROVIDENCE ST. PETER HOSPITAL,<br><br>    Counter-Defendant. | CASE NO. C08-5639RJB<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

This matter comes before the Court on United Staff Nurses' Union Local 141's ("union") Motion for Summary Judgment Confirming Arbitration Opinion and Award (Dkt. 8), and Providence St. Peter Hospital's ("hospital") Motion for Summary Judgment Vacating Arbitration

ORDER
Page 1

Award (Dkt. 10). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case centers on an arbitration opinion and award concerning meal periods and rest breaks for the union's nurses[1] at the hospital. Dkts. 8 and 10. The union seeks an order: 1) confirming the arbitration opinion and award, 2) awarding it attorneys' fees and costs, 3) directing the hospital to pay interest on back-pay due under the arbitration award, and 4) denying the hospital's effort to modify the award to prohibit the union from posting the award on its website. Dkts. 8, 13, and 15.

The hospital seeks an order: 1) vacating the arbitration opinion and award and 2) prohibiting the union from unilaterally publishing the arbitrator's opinion and award. Dkts. 10, 14 and 16.

### A.  FACTS

The hospital is an acute care facility with 360 beds. Dkt. 11-4, at 222. It offers a range of services to the community including emergency services, inpatient and outpatient surgery, and diagnostics. *Id.* It has several units including labor and delivery, telemetry, and pediatric. *Id.* It provides acute care in units like the medical renal unit, oncology unit, and intensive care nursery. *Id.* The hospital also has a psychiatric unit. *Id.* It employs between 600 to 700 registered nurses. *Id.*

The union has represented the hospital's non-supervisory registered staff nurses since the 1980s. Dkt. 1, at 2. The hospital and union are parties to a collective bargaining agreement ("CBA"). Dkt. 11-2. Parties do not dispute that this case is governed by their April 30, 2004, - March 1, 2007, CBA.

####         1.  *Collective Bargaining Agreement*

The CBA contains a grievance procedure (Dkt. 11-2, at 36), utilized here in two instances.

---

[1] Unless otherwise noted, references to "nurses" or "union's nurses" in this Opinion relates to the nurses represented by the union under the relevant CBA.

ORDER
Page 2

The first grievance, dated March 23, 2006, was submitted "on behalf of [Dawn Cutler] and all affected nurse[s] [sic] in the bargaining unit." Dkt. 9-5, at 2-3. This grievance raises issues related to meal periods and rest breaks. *Id.* The second grievance, filed November 26, 2006, by Cliff Rice, alleges that the hospital violated the CBA regarding missed breaks. Dkt. 9-5, at 28.

The CBA's provision regarding meal periods and rest breaks provides,

> 7.5 <u>Meal/Rest Periods</u>. All nurses shall receive an unpaid meal period of one-half (½) hour. Nurses required to remain on duty or return to their nursing unit to perform nursing duties during their meal period shall be compensated for such time at the appropriate rate of pay. All nurses shall be allowed two (2) paid rest periods of fifteen (15) minutes each during each shift of eight (8) hours or more in duration. The application of this section shall be consistent with state law.

Dkt. 11-2, at 19. The CBA has addendums. Dkt. 11-2. Addendum 1, entitled: "Twelve (12) Hour Weekend Shift Schedule," and Addendum 3, entitled: "Twelve (12) Hour Shift Schedule," each contain the following provision: "[t]he nurse shall be allowed two fifteen (15) minute rest periods, one fifteen (15) minute period to be taken during each half of the shift." Dkts. 11-2, at 41 and 44. Both Addendums state that "[a]ll existing contractual provisions shall apply unless otherwise provided for herein." *Id.*

The CBA provides further that if the grievance procedure does not settle the dispute, the parties may submit the issue for arbitration, as they did here. Dkt. 11-2, at 37. Parties agreed that "[t]he arbitrator's decision shall be final and binding on all parties." *Id.* The CBA provides that, "[t]he arbitrator shall have no authority to add to, subtract from, or otherwise change or modify the provisions of the Agreement as they may apply to the specific facts of the issue in dispute." *Id.* The CBA has a "Complete Agreement" section, providing in part, that the parties

> Each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically discussed during negotiations or covered in this Agreement, whether or not such subject or matter may have been within the knowledge or contemplation of either or both of the parties.

Dkt. 11-2, at 39.

    2.    *Relevant Washington State Regulations*

Washington State has promulgated regulations regarding meal periods and rest breaks for employees. The Washington Administrative Code provides,

ORDER
Page 3

> (1) Employees shall be allowed a meal period of at least 30 minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.
> (2) No employee shall be required to work more than five consecutive hours without a meal period.
> (3) Employees working three or more hours longer than a normal work day shall be allowed at least one 30-minute meal period prior to or during the overtime period.
> (4) Employees shall be allowed a rest period of not less than 10 minutes, on the employer's time, for each 4 hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.
> (5) Where the nature of the work allows employees to take intermittent rest periods equivalent to 10 minutes for each 4 hours worked, scheduled rest periods are not required.

WAC 296-126-092.

               3.     *Arbitrator's Decision*

Parties engaged in arbitration proceedings, including a seven day hearing. Dkt. 11-3. On July 24, 2008, the arbitrator issued her 65 page opinion and award. *Id.*

The arbitrator found that the CBA provides that "nurses be allowed two (2) paid rest periods of fifteen (15) minutes each during each shift of eight (8) hours or more in duration." *Id.,* 35. The arbitrator reviewed the express language in the CBA, testimony at the hearing regarding bargaining history and the parties' past practices to determine whether the CBA's rest break provisions require the hospital to allow the nurses 15 minute block rest periods or intermittent rest periods. *Id.,* at 14-25. She interpreted the CBA "to mean a 15-minute block of time for each rest period; not intermittent breaks." *Id.*, at 25 and 35. Based upon the testimony regarding past practices she found that "parties agree here that a third 15-minute rest period is required for nurses that work a 12-hour shift." *Id.*

The arbitrator reviewed the express language of the CBA, testimony at the hearing, Washington law, and guidelines drafted by the Washington Department of Labor and Industry to determine that the union's nurses shall receive an unpaid meal period of one-half hour in duration. *Id.*, at 27-34. She found that "[i]n order to remain unpaid, nurses must be completely relieved from duty and receive 30 minutes of uninterrupted meal time." *Id.*, at 34. The arbitrator

ORDER
Page 4

concluded that "[m]eals must be paid when nurses are required to remain on duty or return to their nursing unit" during their meal period. *Id.*, at 35. She determined that "[t]he entire meal period must be paid without regard to the number of interruptions." *Id.*

After considering the evidence at the hearing, the arbitrator determined that nurses were not receiving meal and rest periods, and were under-reporting missed meal and rest periods. *Id.,* at 57. She found that the hospital "communicated incorrect information to the nurses about their entitlement to additional compensation for missed rest periods." *Id.* She found that "this incorrect information was perpetuated for a considerable period of time and the [hospital] did not attempt to correct it until recently; well after this dispute arose." *Id.* She found that the "hospital's forms for tracking nurses' hours contain[ed] no recognition of rest periods on its face." *Id.* She found that the hospital did not "provide procedures to nurses that correctly informed them about their rights under the CBA." *Id.*, at 57. She found that to some extent, the nurses were afraid of management's response to the reporting of missed breaks. *Id.,* at 55. The arbitrator concluded that, considering all the facts, arguments, and authorities submitted, the hospital violated the meal and rest period provisions of the CBA. *Id.,* at 57.

In her award, the arbitrator required the hospital "cease and desist" violating the meal period and rest break provisions of the CBA. Dkt. 11-3, at 64. Her award further provides:

> All affected registered nurses in the Union's bargaining unit, those in employ of the Employer from March 9, 2006, to date, shall be compensated for missed block 15-minute rest periods and missed meals at the registered nurse's appropriate rate, without interest. Within 21 days of its receipt of this Opinion and Award, the employer shall provide individual claim forms to all registered nurses in its employ during the period from March 9, 2006, to date. On those claim forms registered nurses shall, within 14 calendar days, declare under penalty of perjury, the actual or estimated number of block 15-minute rest periods and 30-minute meal periods missed since March 9, 2006, to date. The Employer shall then, within 21 calendar days, audit those claim forms, shall arrive at the amount due each registered nurse and shall compensate them. The Employer and the Union shall meet and confer over any remaining disputes concerning the amount due the registered nurse.

*Id.*, at 64-65. She additionally required the hospital to provide a written statement, concerning its legal and contractual obligations, to the nurses. *Id.,* at 65. She required the parties to "meet and confer" regarding the content of the written statement. *Id.* The hospital was directed to "perform an audit of reported meal and rest period claims" for the relevant period, share the results with the

union, and "meet and confer" to determine if a new audit is necessary. *Id.* The arbitrator agreed to retain jurisdiction for ninety days to resolve issues, if any, regarding the remedy. *Id.*

        4.    *Proceedings After Arbitrator Issued Her Decision*

After the decision was issued, the union posted the arbitrator's opinion and award on its website. Dkt. 9-14, at 19-21. The hospital objected and requested that the arbitrator order the union to remove the opinion and award from the website. *Id.* The hospital also filed a motion for clarification and reconsideration. *Id.*, at 23. The arbitrator found that she did not have jurisdiction to order the union remove the decision from its website. Dkt. 9-4, at 2-3. She denied the hospital's motion for reconsideration and clarification. *Id.* This suit followed.

**B**.    **ISSUES RAISED IN PENDING CROSS MOTIONS FOR SUMMARY JUDGMENT**

        1.    *Cross Motions on the Arbitration Award*

The union argues that the arbitrator's opinion and award must be enforced because: 1) federal labor policy favors the arbitration of disputes, 2) to effectuate the policy, courts must give great deference to arbitrator's decisions and remedies, and 3) the arbitrator's opinion and award here draw their essence from the CBA. Dkts. 8, 13 and 15.

The hospital argues that the award must be vacated because: 1) the award does not derive its essence from the agreement, 2) the arbitrator exceeded the scope of issues submitted, and 3) the arbitrator's award violates public policy. Dkts. 10, 14, and 16.

        2.    *Union's Motion for Attorneys Fees and Prejudgment Interest*

The union argues that it is entitled to attorneys' fees and prejudgment interest because the hospital unjustifiably refused to comply with the arbitrator's award. Dkts. 8, 13 and 15. The hospital argues that an award of attorneys fees and prejudgment interest is not warranted. Dkts. 10, 14 and 16.

/

//

        3.    *Hospital's Motion to Prevent Posting the Arbitrator's Opinion and Award on the Union's Website*

The union argues the First Amendment protects its right to post the arbitrator's opinion and award on its website. Dkts. 8, 13, and 15. It argues that the arbitrator correctly determined that she lacked jurisdiction to resolve the hospital's claim against the union for posting her decision on its website. *Id.*

If the award is retained in its current or altered form, the hospital moves the Court for an order modifying the award "to include a finding that the union is not permitted to unilaterally publish the award." Dkt. 10, at 19; and Dkts. 14 and 16. The hospital argues that publishing the award on the union's website is inconsistent with the spirit of the agreement, which was to engage in private dispute resolution. *Id.*

### C. ORGANIZATION OF THE OPINION

This opinion will first address the hospital's motion to vacate the arbitrator's opinion and award, then the union's motion for attorneys' fees and prejudgment interest, and finally, the hospital's motion for an order prohibiting the union from publishing the opinion and award.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     ARBITRATION AWARD REVIEW**

The hospital seeks to vacate or modify the arbitration award under Section 301 of the Labor Management Relations Act. Dkt. 1, at 3(*citing* 29 U.S.C. § 185(a), *et seq*.). Section 301 permits court review of arbitration conducted pursuant to a collective bargaining agreement. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 986 (9th Cir. 2001).

"Courts accord an arbitrator's decision a 'nearly unparalleled degree of deference.'" *Teamsters Local Union 58 v. BOC Gases, Inc.,* 249 F.3d 1089, 1093 (9th Cir. 2001) (*quoting Stead Motors v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1204 (9th Cir.1989) (*en banc*)). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). The Ninth Circuit has identified four instances in which the vacatur of an arbitration award is warranted: (1) when the award does not draw its essence from the collective bargaining agreement; (2) when the arbitrator exceeds the scope of the issues submitted; (3) when the award runs counter to public policy; and (4) when the award is procured by fraud. *Sprewell,* at 986.

The hospital contends that the first three exceptions apply. Dkts. 10, 14 and 16. Each will be examined in turn.

1. ***Whether the Award Draws Its Essence from the CBA***

An arbitrator's judgment may only be questioned "where the arbitrator ignores the contract's plain language, choosing instead to impress his own brand of industrial justice." *United Steel Workers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 598 (1960). The Ninth Circuit has recently held that an arbitrator's award may be set aside if their "interpretation of any of the relevant CBA provisions was not on its face a plausible interpretation of the contract." *Virginia Mason Hosp. v. Washington State Nurses Ass'n*, 511 F.3d 908, 914 (9th Cir. 2007) (*citing Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir.1993)). "A plausibility review does not represent an independent avenue for a merits-based attack on an arbitral award." *Id.* It is "simply another way of formulating the old rule of *Enterprise Wheel*, namely, that the arbitrator must derive the award from the essence of the contract and may not 'dispense his own brand of industrial justice.' " *Id.* (*internal citations omitted*).

Under this standard, the arbitrator's interpretation of a majority of the CBA provisions were not implausible. *See Virginia Mason*, at 914. The arbitrator explained, in great detail, her findings based upon the plain language of the CBA, the testimony and exhibits presented at the hearing, including why she determined that the nurses were entitled to block rest periods under the CBA rather than intermittent rest breaks. She explained the logic underlying her conclusions in her opinion and award. "An arbitration award will only be set aside for failing to draw its essence from the contract in those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract." *Sprewell*, at 986-987 (*internal quotations omitted*). Regardless of whether this Court would reach the same conclusion advanced by the arbitrator, deference must be given to her decision on the grounds that she was, at the very least, "arguably construing or applying the contract." *Id.* A few of the hospital objections are well taken, however, and all of them will now be considered in the following manner: objections

regarding the arbitrator's contract interpretation and objections regarding the remedy.

          a.        <u>Contract Interpretation</u>

                  i.        *"Shall Receive" vs. "Shall be Allowed"*

The hospital argues first that the opinion does not derive its essence from the CBA because the arbitrator failed to consider the plain language of the CBA when she did not distinguish between the CBA's use of the terms "shall receive" (unpaid meal periods) and "shall be allowed" (two paid rest periods). Dkt. 10, at 8-9 and Dkts. 14 and 16. The hospital argues that the plain language of the CBA "distinguishes the hospital's obligation to ensure nurses *receive* their meal periods from its obligation to merely *allow or provide access to* rest periods." *Id.*, at 9. The hospital alleges that the award improperly adds to provisions of the CBA by "improperly requiring the hospital to force nurses to take block rest breaks rather than allow or provide access to rest breaks." *Id.*

This argument does not provide a basis to vacate the opinion and award. The hospital fails to point to specific statements in the opinion or portions of the award which require the hospital to "force" nurses to take block rest breaks. In light of the fact that the hospital must, under *Wingert v. Yellow Freight*, 146 Wn.2d 841, 848 (2002), pay employees time and a half if nurses miss their breaks due to work duties, it may choose to do so. But the hospital makes no showing that the opinion or award "forces" it to do so. In any event, no showing was made that the arbitrator's interpretation of the CBA "was not on its face a plausible interpretation of the contract," in this regard, and so does not provide a basis to overturn the award. *Virginia Mason Hosp.*, at 914.

                  ii.        *Consistent with State Law*

The hospital argues that, by finding that the language of the CBA should be interpreted to mean block rest periods rather than intermittent rest periods, the arbitrator failed to acknowledge the express language of the meal period and rest break provision which states that "[t]he application of this section shall be consistent with state law." Dkt. 10, at 9-12; Dkts. 14 and 16. The hospital argues that it is undisputed that WAC 296-126-092(5) permits the use of intermittent

breaks. *Id.*

The hospital again makes no showing that the arbitrator's findings and conclusions on this issue were not a "plausible interpretation of the contract." *Virginia Mason Hosp.*, at 914. The arbitrator's decision is not inconsistent with state law. The fact that state law <u>permits</u> the use of intermittent breaks does not mean that parties could not contract for block rest periods. The hospital sites no authority that block rest periods are inconsistent with state law. This argument does not provide a basis upon which to vacate the opinion and award.

### iii. *Number of Breaks in Twelve Hour Shift*

The hospital argues that the arbitrator's award did not draw its essence from the CBA when she found that a twelve hour shift merited three fifteen minute breaks, when the express language of the CBA provides for two fifteen minute breaks. Dkts. 10, 14 and 16.

The hospital's argument is well taken. The express language of the CBA's Addendums on 12-hour shifts each contain the following provision, "The nurse shall be allowed two fifteen (15) minute rest periods, one fifteen (15) minute period to be taken during each half of the shift." Dkt. 11-2, at 41 and 44. Although an arbitrator may also rely on "the industrial common law-the practices of the industry and the shop-which is equally a part of the collective bargaining agreement although not expressed in it," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960), here the <u>express</u> language of the CBA is that union nurses get two, not three, breaks during 12 hour shifts. To the extent that the arbitrator's opinion and award finds otherwise it should be vacated.

### b. <u>Objections Regarding the Remedy</u>

### i. *Information*

The hospital argues that the arbitrator's remedy rests upon a finding that the hospital had an affirmative duty to inform nurses of changes to the state law regarding missed meal periods or rest breaks. Dkt. 10, at 13, and Dkts. 14 and 16. The hospital argues that the CBA contains no such requirement, and Arbitrator made no finding of a violation of the CBA for failure to inform the nurses of any changes in the law. Dkt. 10, at 13. The hospital acknowledges that it must post

information related to wages and hours outlined by the Washington Department of Labor and Industries in a poster. *Id.* Accordingly, the hospital argues that "[t]he award must be vacated to the extent it is premised on the arbitrator's conclusion that the hospital had an affirmative, non-contractual obligation to notify nurses of changes to the law or to provide information beyond the posting required by state law." *Id.,* at 14.

The hospital's argument here is not well taken. The arbitrator found that the hospital violated the relevant provisions of the CBA, in part, because the hospital misinformed union nurses about their rights under the CBA regarding missed rest break periods, the hospital's timekeeping forms did not include a section regarding missed rest breaks periods, and the hospital "did not provide and disseminate well-defined procedures for taking of rest/meal periods on units/shifts on a consistent basis." Dkt. 11-3, at 57. It cannot be reasonably be argued that the arbitrator's award requiring the hospital to provide clear information to the union nurses, in light of the arbitrator's findings regarding its past conduct, does not draw from the "essence of the contract." *See Sprewell*, at 986-987 (*internal quotations omitted*). Accordingly, this does not provide a basis to vacate the award.

ii. *Estimated Missed Meal Periods*

The hospital argues that the arbitrator's decision did not draw its essence from the CBA when it created new obligations not supported by the terms of the CBA in providing a new remedy for missed meal periods in the award. Dkt. 10, at 12; Dkts. 14 and 16. The hospital argues that the CBA includes language for compensating nurses for missed meal periods and that testimony at the hearing showed that the hospital complied with the CBA. *Id.* The hospital argues that the arbitrator's concern that nurses failed to report missed meal periods not did give rise to a violation of the CBA or justify the remedy that the arbitrator ordered (that nurses should fill out a form, stating known missed meal periods and **estimated** missed meal periods). *Id.* The hospital objects to nurses <u>estimating</u> additional missed meal periods which were not reported. *Id*.

It is clear from the language of the CBA that compensation for missed meal periods was contemplated by the parties, and therefore this remedy, in general, draws its essence from the

CBA and the award should be upheld. The hospital acknowledges that the union provided evidence at the hearing that, after the audit ordered by the arbitrator, could show that the hospital erred in failing to pay reported missed meal periods. Dkt. 16, at 7. To the extent that the arbitrator's award provides a remedy for reported missed meal periods which remain unpaid, it should be upheld. To the extent that the arbitrator's award allows nurses to file claims for known missed meal periods due to work related activities, which were unreported, the award should also be upheld. The CBA does not specify when a claim for missed meal periods must be filed with the hospital. The CBA does require that the hospital pay nurses for missed meal periods. The arbitrator's award requires the nurses sign the claim form under the penalty of perjury. This provision of the award provides a sufficient remedy for the hospital if it feels that the nurses are making unjustified claims.

The arbitrator's provision for "estimated" missed meal periods is more troubling. The arbitrator made findings that the hospital caused confusion regarding their obligation to allow block **rest breaks** and failed to provide reasonably clear procedures for making claims for **missed rest breaks**. Dkt. 11-3, at 57. No such finding was made in regard to **missed meal periods**. In fact, the arbitrator noted that the hospital had in place, for the duration of the CBA, a process by which represented nurses could receive compensation for missed meal periods. *Id.* The arbitrator did find, however, that there was some evidence that nurses were under-reporting missed meal periods due to their fear of disapproval by management. *Id.*, at 55. In any event, missed meal breaks are compensable under both the CBA and state law. The provision of the award that allows nurses to estimate missed meal periods does draw its essence sufficiently from the CBA, and accordingly the Court cannot find that this portion of the award is not a "plausible interpretation of the contract." *Virginia Mason Hosp.*, at 914.

### iii. *"Meet and Confer" Requirement*

The hospital argues that the award's requirement that parties "meet and confer" about the content of the notice to the nurses, audit procedures, and disputes is a requirement which conflicts with the language in the CBA. Dkts. 10, at 14; Dkts. 14 and 16. It argues that this requirement in

the award must be vacated because it not only does not draw its essence from, but conflicts with, the CBA. *Id.*

The arbitrator's requirement that the parties "meet and confer" is in direct conflict with the express language of the CBA. The parties agreed that "the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically discussed during negotiations or covered in this Agreement." Dkt. 11-2, at 39. Although it is in the parties' best interest so to do, the arbitrator's direction for them to "meet and confer" did not draw its essence from the contract and is not a "plausible interpretation of the contract." *See Virginia Mason,* at 914.

### 2. *Whether the Arbitrator Exceeded the Scope of the Issues Submitted*

The second instance in which the vacatur of an arbitration award is warranted is when the arbitrator exceeds the scope of the issues submitted. *Sprewell,* at 986.

The hospital argues that the award must be vacated because the arbitrator crafted a remedy beyond the scope of the issues submitted. Dkt. 10, at 15; Dkts. 14 and 16. The hospital points to paragraph 4 of the award which initially states that it applies to "affected registered nurses in the union's bargaining unit," but points out that later the arbitrator extends her ruling to "all registered nurses in employ of Employer from March 9, 2006 to date." Dkt. 10, at 16. The hospital argues that this language impermissibly covers unrepresented nurses, such as managers. *Id.*

The arbitrator's opinion and award should not be vacated on this basis. The first portion of the paragraph clearly identifies the nurses represented by the union as the nurses to whom the hospital need address. "A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *United Steel Workers of America v. Enterprise Wheel and car Corp.,* 363 U.S. 593, 598 (1960). The union denies that the award applies to any nurses not represented by it. There is no evidence that the arbitrator intended to include nurses other than those represented by the union in the award.

### 3. *Whether the Award Runs Counter to Public Policy*

The third instance in which the vacatur of an arbitration award is warranted is when the award runs counter to public policy. *Sprewell,* at 986. In order to justify vacating the award on this basis, the hospital must first identify the public policy, and "[a]ny such policy must be explicit, well defined, and dominant, and it must be ascertained by reference to the laws and legal precedents, not from general considerations of supposed public interests." *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 37, 57-58 (2000). The hospital then has to "demonstrate that that policy specifically militates against the relief ordered by the arbitrator." *Virginia Mason Hosp. v. Washington State Nurses Ass'n*, 511 F.3d 908, 916 (9th Cir. 2007).

a. <u>Punitive Damages in Contract Award</u>

The hospital argues that the award should be vacated as it runs counter to public policy because the award creates a remedy that is "premised on estimates that are not subject to cross examination, it creates a windfall opportunity for individual claims that are beyond any compensation that is due under the contract or the law, and is therefore punitive in nature." Dkt. 14, at 15. It argues that in contract cases, punitive damages are contrary to public policy. *Id.*

The union argues that the arbitrator's award affording the nurses the opportunity to claim estimated missed meal periods and rest breaks is not contrary to public policy. Dkts. 8, 13, and 15. The union argues that the arbitrator utilized the frame work set up in *Alvarez v. IBP, Inc.*, 339 F.3d 894, 914-15 (9th Cir. 2003) to justify her award. In *Alvarez*, employees brought a class action against their employer under the Fair Labor Standards Act ("FLSA") and Washington's Minimum Wage Act ("WMWA"), alleging that the employer was required to compensate them for the time it took to change into required protective clothing and safety gear. The *Alvarez* court concluded that the employer was required to pay employees for the time it took them to put on and take off the clothing. *Id.* The court then affirmed the district court on the question of whether damages would be awarded based upon a reasonable estimate of the time it took to don and doff the clothing. *Id.* The Ninth Circuit noted it has "approved approximated awards where plaintiffs can establish, to an imperfect degree of certainty, that they have performed work and

have not been paid in accordance with the FLSA." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 914-15 (9th Cir. 2003) (*citing Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir.1986)) *(internal quotation marks omitted )*. "The only uncertainty is the amount of damage, not the fact that damages are due." *Id.*, at 915. Where an "approximate award based on reasonable inferences forms a satisfactory surrogate for unquantified and unrecorded actual times, an approximated award is permissible." *Id*.

Although this matter differs from *Alvarez* in that the Court found there that all workers were not being compensated for work time (donning and doffing clothing) each work day and here it has not been shown that the union's nurses have missed a meal period or rest breaks for work purposes each work day, the general holdings announced in *Alvarez* cannot be discounted in considering whether to set aside an arbitration award. The hospital's argument that compensation based on estimates would result in a windfall (and accordingly operates as punitive damages) is premised on the notion that union nurses will sign claim forms, under the penalty of perjury, that are false. The hospital complains that under this award, it is without a way in which to challenge false claims. Dkts. 10, 14, and 16. The hospital's argument is not well taken. The arbitrator's award requires an audit, affording the hospital protection against claims which are false. There is no showing that the hospital could not deny a claim. Under the award the arbitrator indicated that she would retain jurisdiction for 90 days to help the parties resolve any disputes regarding claims. Dkt. 11-3, at 65. Even if the arbitrator is no longer willing to exercise jurisdiction over claims disputes, there is no showing that hospital or the union's nurses could not then take advantage of the dispute resolution procedures in the CBA. The hospital has not shown an sufficient connection between the arbitrator's award and a violation of an "explicit, well defined, and dominant" public policy. *Eastern Associated Coal Corp.*, at 57-58 in light of the holding in *Alvarez*. The award should not be vacated on this basis.

                        b.        <u>Class Action Remedy</u>

The hospital also argues that the arbitrator acted beyond the scope of her authority when she crafted a remedy for a class of nurses when she was presented with grievances on behalf of

only two people. Dkts. 10, 14, and 16.

The arbitration award should not be set aside on this basis. The hospital has not identified an "explicit, well defined, and dominant" public policy that "specifically militates against the relief ordered by the arbitrator." *Virginia Mason.*, at 916. Moreover, the hospital failed to raise its concerns over a class action remedy in the grievance process, even though both grievances stated that they were bringing their grievance on behalf of themselves and other nurses. Dkt. 9-5, at 2-3 and 28. The hospital failed to raise this issue at the arbitration hearing where evidence was presented regarding several union nurses. The basic reasoning behind Fed. R. Civ. P. 15 (b) (2) applies. Rule 15 (b) (2) provides that "[w]hen an issue not raised in the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Here, not only was the issue of a class remedy raised, but it was tried by the parties. The hospital's motion to vacate the award because it affords a class remedy should be denied.

c. Requirement to "Meet and Confer"

The hospital argues that the award should be vacated in that it requires that parties "meet and confer." Dkt. 10. This Opinion has already held in Section (B)(1)(b)(iii) that the arbitrator's opinion and award, to the extent that it requires the parties "meet and confer" over various matters, should be vacated. No further analysis is required here.

4. *Conclusion on Whether the Opinion and Award Should be Vacated*

The arbitrator's opinion and award should be upheld except that it should be vacated to the extent that: 1) the opinion found that nurses who work 12 hour shifts are entitled to three 15 minute breaks and 2) the award requires parties to "meet and confer" on various issues.

**C. ATTORNEYS' FEES AND PREJUDGMENT INTEREST**

A court may award attorneys' fees if it finds that the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Sheet Metal Workers' Intern. Association Local Union No. 359 v. Madison Industries*, 84 F.3d 1186, 1192 (9th Cir. 1996). "An unjustified refusal to abide by an arbitrator's award may equate an act taken in bad faith, vexatiously or for oppressive reasons." *Id.* (*internal citation omitted*).

1   There has been no showing that the hospital here "acted in bad faith vexatiously,
2   wantonly, or for oppressive reasons." The hospital sought to clarify the arbitrator's decision and
3   had some justifiable reasons to do so. Accordingly, no award of attorneys' fees is warranted.
4   Prejudgment interest is available in Section 301 actions. *See International Ass'n of*
5   *Bridge, Structural & Ornamental Iron Workers Local Union No. 103 v. Higdon Construction*
6   *Co.*, 739F.2d 280, 283 (7th Cir. 1984).
7   The union's motion for an award of prejudgment interest should be denied without
8   prejudice. In light of the fact that a portion of the arbitrator's opinion and award should be
9   vacated, no showing is made here that prejudgment interest should be awarded at this time.

### D. POSTING THE ARBITRATOR'S OPINION AND AWARD ON THE WEB

Although the hospital does not label its request as such, its attempt to get this Court to prohibit the union's posting of the arbitrator's opinion and award on the union's website will be construed as a form of injunctive relief.

Courts considering requests for injunctions have consistently recognized the significant public interest in upholding First Amendment principles. *Sammartano v. First Judicial District Court, in and for County of Carson City,* 303 F.3d 959, 973 (9th Cir. 2002). There is a heavy presumption against the constitutional validity of a prior restraint on expression, such as the one the hospital seeks here. *Organization for a Better Austin v. Keefe,* 402 U.S 415, 419(1971)(holding that preliminary injunction constituted an impermissible prior restraint on speech in violation of the First Amendment). No prior decisions support the claim that the interest of an individual company in being free from public criticism of its business practices warrants use of the injunctive power of a court. *See Organization for a Better Austin,* at 420.

The hospital has made no showing that a restraint on speech is warranted here. It does not cite to any authority supporting such an order. There is no provision in the CBA that requires disputes be kept out of the public realm. Even if one of the underlying purposes of using an arbitration clause is for the private resolution of disputes, the hospital has voluntarily given up its opportunity to keep these matters private. It has chosen to file this case, and the arbitrator's

opinion and award are now a part of the public record. The hospital has provided no basis upon which to issue an order prohibiting the union's publishing the rulings of this Court, or any other portion of the public record. To the extent that the hospital seeks an order preventing the union from posting the arbitrator's opinion and award on its website, or in any other manner from publishing these materials, the motion should be denied.

### III. ORDER

Therefore, it is hereby, **ORDERED** that:

- The union's motion to affirm the arbitrator's opinion and award (Dkt. 8) is **GRANTED, IN PART, AND DENIED IN PART**; The hospital's motion to vacate the arbitrator's opinion and award (Dkt. 10) is **GRANTED, IN PART AND DENIED IN PART**: The arbitrator's opinion and award are **UPHELD, EXCEPT THAT**:
    - The opinion is **VACATED** to the extent that it found that nurses who work 12 hour shifts are entitled to three 15 minute breaks, and
    - The award is **VACATED** to the extent that it requires parties to "meet and confer" on various issues;
- The union's motion for attorneys' fees (Dkt. 8) is **DENIED**;
- The union's motion for prejudgment interest (Dkt. 8) is **DENIED WITHOUT PREJUDICE**;
- The hospital's motion for an order prohibiting the union from publishing the arbitrator's opinion and award on the union website (Dkt. 10) is **DENIED**;
- The Clerk of the Court is directed to **CLOSE** this case;

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 19th day of February, 2009.

_____
ROBERT J. BRYAN
United States District Judge